We'll move on to our next case, Roberts v. Commissioner of Internal Revenue, Mr. Crago. Good morning, Your Honors. May it please the Court, I'm Richard Crago for Mr. Roberts. We appeal the tax court judgment under Internal Revenue Code Section 183, the so-called Hobby Loss Provision. The court found that Mr. Roberts' Indiana horse operation was not engaged in for profit during 2005 or 2006, but was during 2007 and 2008. We appeal 2005 and 2008. Do we know anything about what's happened since 2008? What has? Mr. Roberts is still in the horse business. He tells me he owns about 30 horses now. He owns how many? 30? I'm sorry, yes. 30 horses? Yes, thoroughbreds. But is there any financial information in the record about his experiences since 2008? No, Your Honor. No, he was pretty much confined to those four years. So we don't know, for example, whether the IRS is allowing him to take deductions? Well, I know they have not challenged him. They haven't challenged him. No, Your Honor. Anyway, so we appeal 2005 and 2006, and that's the only issue. Now, there are about 150 of these Section 183 horse cases out there. Virtually all focus on the nine regulatory factors, which are designed to smoke out a taxpayer's real motive, profit or pleasure. Here, only two of those factors favored the commissioner, but it carried the day. Most of my career has been devoted to these horse cases. No party has prevailed with only two factors. I wasn't involved in trial, but I did advise that that was not enough. With the proper deference given to trial courts, we needed more. Is there any weighting of the factors, or are all nine considered to be of identical significance? No, Your Honor. The regulations specifically say that no one's to be given more weight than another. They even go outside and say you can reuse other factors. In other words, they're completely useless. If there are no weights, if one can outweigh eight, and if you can just throw the whole list away and consider anything else you want, what good are they? Well, all I can tell you is that you're the wrong person to ask. I'll be asking the commissioners. That's what the court said. They're not your nine factors, I understand. I did advise that we needed more than that, though, given the deference of trial courts. We needed to challenge one or both, and I truly believe both were wrong, and we challenged both. But we needed one of those, and if we got that, then with eight of the nine pillars gone, the house of cards would fall. Today, I want to address one factor, the pleasure factor. The decision mused that the mere availability of pleasure was enough. Well, even the commissioner didn't say that. No, we and the commissioner actually agree on the proper standard. Quote, the question of which element, pleasure or profit, predominated, unquote. Hear, hear. But the court and the commissioner then made three erroneous arguments. First, Mr. How does the Internal Revenue, or the tax court, how do they weigh a pleasure against profit? So a lot of business people get a lot of pleasure out of their business. They make a lot of money, they have big shots, and so on. Does that, could a profitable business, could a profitable business be denied the deductions on the ground that the owner really loved what he was doing? He loved it more than he loved the money, right? Yes, Your Honor, but it's losses that are covered under this statute, not just deductions. So they would have to lose money before they were challenged. There's a case in our brief that says exactly that. Oh, you have to lose, I see. So if they make money, then no matter how, even though it's sort of an accident, they do it for fun, but they're lucky and they make money, they still get their tax deductions? If there are necessary and ordinary business expenses. Yes, but if it's not a business, if it's entered into for pleasure, why could you deduct any of the expenses? I'm sorry, Your Honor. You get to deduct your ordinary and necessary business expenses. Correct. If you enter into some activity, horse racing, for example, or competitive gardening, and you do this for pleasure, you don't have any business expenses. You've just got expenses, and presumably you can't deduct them. That's correct. The taxpayer claims them as business expenses. The government challenges it. So it doesn't matter whether you make a profit or a loss. If you're entering into this as a dilettante, rather than to make a profit, you can't deduct them whether you make money or lose money, because they aren't business expenses. That would come under Section 162, whether they were business expenses, not under Section 183. But at any rate, the first argument that Donald Trump said, I've made billions of dollars, but really, the only reason I do this, I really love to see my name on a big building. I mean, look at Chicago. Look at the Trump building, this huge name. And maybe he'd say, you know, if I make any money, I'd still build these buildings, because that's the real key. If he lost money, he might be in trouble. But unfortunately, the government usually challenges horses. But couldn't the government find a profitable business to be a hobby? And therefore, as Judge Easterbrook was saying, that these weren't really business expenses. These were the hobby expenses. The government could claim that, yes, if there were losses. They could certainly claim that. Here, this Mr. Roberts owned a gentleman's club, dancers. It was close to his horse farm. He believed that it worked. And reportedly, he did not check before allowing admission that the people seeking entry at the door were actually gentlemen. I'm sorry. The commissioner in the court said that he could escape. He thought it was a hazardous to your health to own a nightclub. So he got out of the management business of it. And they claimed that all he had to do is walk across the road to his farm to gain relief. They say that's a pleasure element. I think that's pretty bizarre. And it was only raised the first time in a motion to reconsider. In the main decision, the court didn't follow that. They, in fact, said that he ran dancers by, quote, cell phone management, unquote. So the two are rather contradictory. And there's no evidence at all. Is there that Roberts or his family members even rode horses? Or they actually spent a lot of time at the track or elsewhere socializing with the owners? The court held that factor in favor of the taxpayer. Right. That's what I'm saying. I mean, that's why it's a confusing situation. They also say that his leadership in a trade association showed pleasure. Well, why? Because he must have socialized to get elected. There's no evidence of that. And again, he wasn't even elected until 2007. Have you ever been elected president of a local bar association? No. Because on that standard, you couldn't deduct any of your expenses. Yes, your honor. Finally, if he won a race, he got applauded. Does that third party applause amount to his pleasure? No other case says so. And Mr. Roberts raced to win and get the money, not primarily for applause. Now, we countered with three arguments with solid evidence that even the commissioner and the court agreed with. First, in 2005, Mr. Roberts bought a new farm for a million dollars. He improved it with a half million dollars of horse-related improvements. And they agree with that, but they say his profit motive didn't come until he began operating it in 2007. Why? No profit motive when he spent a million and a half dollars? Second, well before 2007, he was on the quote, ground floor, that's the court's words, of lobbying for a slot machine bill to help horse owners. The court and the commissioner agreed, but say profit motive only occurred in early 2007 when the bill actually passed. So all that ground work without profit motive? When was the slot machine? It was passed in early 2007, but he had worked on it for two or three years before that. And finally, we showed that Mr. Roberts' hard work training at the racetrack before 2007, and the court fully agreed, but it gave it no weight. And on the pleasure factor, hard physical labor is a big deal, as confirmed in your Nickerson decision in 1983. I'm sorry, what did you say? I missed what you said right before that. What was it that, after the slot machine, and there was some other, referring to something that the IRS and the tax court said? Well, the hard work training at the track, the tax court agreed that there was plenty of hard work, but gave it no weight. Oh, I see. And we say that it deserves weight. In fact, you say that in the Nickerson decision. So there it is. Three arguments without evidence or authority, and our three with undisputed evidence, which brings us finally to your Stuller decision. There you affirmed a lack of profit motive, but only one of the nine factors favored that taxpayer. So you were correct. This is the flip side. If you find only one factor for the commissioner, we hope you reverse. And on pleasure, that court didn't discuss mere availability. It named the pleasure the taxpayer's love of her horses. But it balanced that against her hard farm work and found the factor neutral. If our court had done that, we wouldn't be here today. But he did like horses. No question. In 1999, I think he had two horses. Correct. So that presumably was for riding, or that was for pleasure? He certainly, well, in fact, when he left dancers, he had opened two other business and quit both of them because he didn't enjoy them. Well, he's been in the horse racing business quite a while now, so obviously he enjoys it. Plenty of cases have recognized that, but they've never lifted that to the level of deciding this personal pleasure issue. You balance things. And here, that's the only factor in the government's favor. We've got a lot of factors, at least that's our position. So all we ask is that you balance Mr. Roberts' profit motive in 2005 and 2006, shown by his purchasing the farm and improving it for a million and a half, shown by his lobbying efforts, and shown by his hard work against any actual pleasure that he indulged in, which we say is nonexistent, except for the one that you've pointed out, his business. There's a case over there, Jackson against the commissioner, a tax court case, saying suffering has never been a prerequisite to taking deductions. In fact, as you say, pleasure in business is usually the reason you succeed. Thank you. Well, thank you very much, Mr. Pagano. Mr. Pett? May it please the court, Curtis Pett representing the commissioner. Your honors, horse racing is a natural combination of sport as well as pursuit of the prize money. The tax court is undisputed that Mr. Roberts' horse activity- What I find particularly puzzling about your position is 2005, 2006, he's not allowed to take the deductions. 2007, he's allowed to take them. And so far as we know, according to Mr. Crago, he's been taking them ever since. Now, what happened? Is it your idea that he went into this for fun, for pleasure, and then suddenly in 2007, he changed his mind and decided this was going to be a business? That seems very implausible. Well, your honor, the tax court was required to decide when the scales tipped from primarily personal to primarily for profit. And this case turns on the clearly erroneous standard of review, as long as the tax court's ultimate- No, no, come on, you're not- that's not responsible. Not answering the question. One could ask the same question in a different way, which is, where can I find in the tax court's opinion of finding a fact that sometime between 2006 and 2007, Roberts' goal changed? The tax court found that his available tools changed, that he had a bigger farm, he was better positioned to make money in 2007. But where can I find a finding that his goal changed? The court decided that the records showed that there were substantial developments in 2007- Yes, and that's another great fallacy. Businesses don't start off profitable. They start- nothing is more common than for a new business to have years of struggle before it becomes profitable. It's still a business. Think Amazon. Amazon lost money continuously for almost a decade before it turned its first profit. Is it the IRS's position that it was engaged in, as Jeff Bezos' hobby, for those first 10 years? Well, the analysis in the case of commercial activities, retail businesses, is somewhat different. This is commercial activity. He's racing and selling these horses. He's getting paid. The mayor may not be making a profit. But I want to come back to my question. Where can I find a finding by the tax court that his goal changed, as opposed to a finding that the tools he had available to him changed? I take it from your non-answer that there isn't any such finding. That would be the critical finding. But I can't find it. Well, Your Honor, it's not black and white. It's not that it was either or. In other words, the judge didn't write it down on paper. Well, that's pretty important. The question is, which motive predominated? Exactly. It's a question of which motive predominated. So I look for a finding that in 2005 and 2006, the taxpayer's motive was to enjoy himself. And then after he bought the bigger farm, his motive was to make profit. And that implies a finding that his goal changed. And I couldn't find that. Now, maybe I didn't read it properly. That's why I'm asking you this question. On the Morrisville property, he purchased that property for investment purposes. He became interested in horses because it had an operational horse stable. Yes, I know you're telling me these things. But my question is, where do I find what seems to me the absolutely essential finding by the tax court? Where is it? I don't think it was made. If it was made, where do I find it? On page 43 of the opinion, the court stated, beginning operations at the Morrisville property is a clear indication that his motivation had turned fully to seeking a profit. It's not that there was no profit motive at all to begin with, and that all of a sudden, that's all there was. There was always pleasure in horse racing. There's always some element of pleasure in sport and pursuit of the prize money. The question is, is this a business? Or is this a hobby, a pursuit, a sideline that somebody who can afford to race horses is doing this for fun, and it's costing money? And yes, just because there's prize money there doesn't turn it into a trade or business. The tax court is responsible for deciding when the scales tip from primarily personal to primarily for business. And the Morris Street activity arose on a property that was purchased for investment purposes, all because there was an operational horse stable. And it grew because Mr. Roberts could afford to pursue. A horse would be the nature of any business. It would grow. It doesn't start at its full level of output. So if he starts small in 2005, gets a little bigger in 2006, 2007, it gets bigger. That doesn't imply any change in his motives. He was pursuing horse racing as a sport at that time. He developed his knowledge and expertise to the point that he wanted to create a professional grade training facility to take his operation to the next level. But what is the evidence that he actually changed his mind? And that in 2005, 2006, he hadn't thought about profit at all, or it was very secondary. And then 2007, he decides profit is his dominant aim. He knew that the Morris Street property was not a profitable horse racing operation. And he knew that he could not construct a suitable training facility on that property because of the zoning restrictions. Yes, but of course, he starts off and he discovers that his facility for his business is too small. So he gets something bigger. That's entirely consistent with having always been thinking, this is my new business. I'm through with the restaurants and so on. Now I'm going to go into horse racing. Start small. By 2007, it's a larger operation. That doesn't have anything to, that doesn't give you any clue as to what he was thinking back in 2005. Well, the fact that the tax court had the job of defining the taxpayer's intent, and it looked at this record, and is essentially undisputed. I mean, the day that he went to Hoosier Park, it wasn't the beginning of a trader business. But the only evidence I've seen, whether you've mentioned that he had a change of mind, change of motive, is that in 2007, or maybe it was 2006, he got a larger facility. That's entirely consistent with growing a business for business reasons. And particularly when you look in 05, when he decides he wants a new training facility, the only reason that doesn't go through is because he's thwarted by the government, right? And that's he then has to go get the bigger parcel. A finder of fact could have found either way on any four of these years. But the fact of the matter is, the tax court looked at it and said he got interested in horses as a personal matter way back in 98. And he grew his knowledge and expertise. He reached the point in 2005 where he said, OK, to make this profitable, I need to build a better mousetrap. I need to build a better facility. But what is the evidence that he changed his mind? Because he was building a new training facility. And he knew he needed that training facility in order to make this activity profitable. But that's entirely consistent. With the business. I mean, he spent $500,000 to $600,000 building training, racing facility from scratch, new stalls. In 07, he started with the facility he hired and assisted. But I mean, all of this was preparation for it. And there's no indication this is a startup situation. Well, it was all in preparation for opening of the Morrisville Training Facility in 2007. And that's why the court said, that's where I'm going to draw the line. Because it started out personal. It got to the point where he got this idea. He wanted to make a profitable business out of this. He knew he couldn't do it. So he sold that property. But see, in 06, he had purchased a dozen horses. He had obtained a trainer's license. He had consulted with multiple trainers. He wasn't in the startup mold then. He had actually taken action. He had moved forward on the business side. That's assuming that horse racing is a commercial trade or business. And I would submit that it's a combination. I submit that people engage in horse racing for recreational purposes. Some take it at the trade or business level. A lot of businessmen, of course, a lot of business people are motivated by more than desire for money. They think it'd be very interesting, challenging, and so on. They want to be, right? Most activities in life are probably. One of the problems here, this regulation with its nine elements, this is ridiculous. How could any person know how the Internal Revenue Service, the tax court, was going to weight these elements? The factors are just tools. Is this court held in Nickerson? Just tools. Come on, look. What would you, if you were thinking of going into business, what on earth would you do with these factors? How would you know what anybody was going to do with all this? Well, mainly, I think what he would do is. The time and effort expended by the taxpayer. What does that mean? If it's business, he'll spend a lot of time. If it's pleasure, he'll spend a lot of time. So what is that fact? What is the significance of that? They're just guidelines. No, tell me what is the significance of whether you're spending a lot of time and effort or a little time. Because if you're engaging in an activity and writing off losses and you hardly spend any time on the activity, the courts would say, well, for crying out loud, it's like you're not trying that hard. He didn't spend any time in 2005 and 2006. No, he spent a lot of time. He spent a lot of time. So what do you do with this factor? You balance it. He spent a lot of time. Balance what? Balance against what? You don't know how much time and effort he spent on pleasure. People spend a lot of time and effort on cost. You don't know how much time. There was no effort to measure, to divide up his time between business time and pleasure time derived from the business. There's nothing like that in the record. There are people who spend a lot of time and effort. There's nothing like that in the record. There's no dispute that he spent a lot of time. There are no time figures in the record. It's not disputed that he spent a lot of time in this activity. A lot of time. A lot of time building a business. A lot of time having fun with the horses. But there's nothing about how the time divided up, which was more time. More time on the business. More time on the pleasure. Nothing in this record. And what I particularly don't understand is how in advance someone looking at the nine factors would have any idea how these factors were going to be weighted by the Internal Revenue Service. Well, I think the most common thing that you would do is have a written business. Look, you have another one about expertise. How do you weigh expertise against time? Suppose he spends loads of time on the business and not much time on the pleasure. Expertise, he doesn't have a lot of expertise. That weighs the other. How do you weigh these? How do you compare them? They're immiscible. There's no. Nobody said it was easy, but the system is such that it is. Not that it isn't easy. It's total nonsense. There is no way to weight these nine factors. It's impossible. The tax court looked at all the factors and said, here's what happened. You can look at them until you go blind. There is no way of weighting these factors. They're too abstract. None of them involve actual measurement. The court read Mr. Roberts' story and said, Let me ask you a distinct question, a concrete question. After he graduated from law school, Thurgood Marshall and his colleagues worked for the NAACP Legal Defense and Education Fund. Their goal was to change the world, and they succeeded. Could they deduct the expenses they incurred in doing that? As business expenses? Yes. They were lawyers. They had business expenses of running a law business. But their goal was never to make money. Their goal was to change the law. Under these factors, or under the commissioner's view, could Thurgood Marshall deduct his expenses from his income? I don't think he would even claim to have had a profit motive. If you don't claim to have a profit motive, then no. So anybody who works for the ACLU or the NAACP Inc. Fund is audited by the IRS, and their claim to expenses is disallowed. Is that a correct statement of IRS policy? Well, not deductible as a trade or business. Like, they would be working on salary, I suppose. I mean, it would be a non-profit organization. I mean, that's a whole different issue. I didn't ask whether the NAACP itself had expenses. I was asking whether Thurgood Marshall could deduct his expenses. And if I understand your argument correctly, and indeed what you just said, the answer is no. Thurgood Marshall had to pay taxes on his gross income not his net income, because he didn't want to make a profit. He wanted to change the world. Well, I'm taxed on my salary. I mean, I incur some expenses coming here to argue, but I can't write it off. I mean, it's just a different issue. People spend a lot of time and effort golfing, and they might win a prize someday. But they work hard, and they spend a lot of time, but that doesn't make it a trade or business. This is a more subtle argument. If you look at a number of these billionaires, Gates, Zuckerberg, Buffett, I'm sure others, they have said they're going to give away all their money. They're not going to give it to their kids. It's all going to go for charitable activity. And does that mean that these billion dollar businesses are not businesses? Because the object is not making money for your business. That's just, that's not the object. That's the means of achieving the personal satisfaction of being a great benefactor. A profitable business doesn't, 183 doesn't come into play in the case of a profitable business. That's only where deductions are being claimed. And if you have a bona fide business, and you're losing money, then the deductions in excess of the income from that activity are deductible. So that's a different situation. And you're running into a situation where people spend a lot of money. What about the elements of personal pleasure recreation? What if Zuckerberg or Gates or Buffett, actually I think it's true, what if they don't really care a lot about, they don't spend a lot of money on themselves, they don't care about that stuff. It's the personal pleasure of building some gigantic business and then using the enormous income of the business to give away, because that's how you get your kicks, right? They're not deducting losses in excess. They're not deducting losses in excess of the income. They're paying income. It's a different situation. We're talking about a situation where you're losing money overall. Then section 183 comes into play. And it comes into play because if you're deducting losses in activities that aren't- Well, this factor nine is elements of personal pleasure recreation. You balance that. Horse racing has both. A lot, most activities, business activities have both. You really think you can balance these nine? In commercial activities, like businesses, sure there's personal pleasure recreation, but presumably the analysis is different there because if it's a business, then it's more likely that there is a profit motive. When you get into sporting activities and things like that, it's a more difficult analysis. And here it's undisputed that he began as personal, ended up as a business, even though he never made a profit. And the tax court looked at the record and said, I've got to decide when the scales tipped. In 2007- Is he making profits now? I don't know. I assume not, but I've not... I really can't say. Doesn't the IRS keep an eye on him? It's odd, they lost interest in him in 2007. Well, after having- Nine years. Unless something else would change, having lost the case and decided not to appeal because of the clarity or only- Oh, so he has a lifetime exemption from- I don't know if nothing changed. I can't speak. I don't work for them. I just represent them in courts. Let me ask you one final question. What's your response to Robert's claim that none of the 150 horse-related cases have found in favor of the IRS with only two factors in support? Every case turns on its individual facts and circumstances and the factors are tools for the court to look at in making the ultimate- So then that is a true statement that there's never been a case- I don't know. I've not read all 150 of those and- Well, I would think you would be alarmed when he would make such a broad sweeping statement and not do any research to determine whether that's true or not, so we'll take that as true. The only thing is the clearly-running standard review and the court said, the picture here shows you started out personal, ended up for profit, said 2007 is the best dividing line, most reasonable dividing line, and we submit that that was a plausible. You can draw other, other fact finders could have drawn different conclusions from this evidence, but in the clearly-running standard review, it has to be implausible. And this story as a whole, Ms. Roberts' story, it is a plausible story. He began as personal, ended up for profit, and all the things that happened in 2007 draw a clear dividing line, and that's the court at page 43 of its opinion summarized its analysis after exhaustively wrestling with all these factors, and we submit that that was not clearly erroneous. Okay, well thank you, Mr. Pat. Thank you. So Mr. Crago, do you have anything? Does he have any? One minute? Sure, okay. Regardless of what the regulations value is, it does say that the taxpayer can have other motives than profit. Secondly, I can't think of much better evidence for getting regulations, much better evidence of profit motive than spending a million and a half dollars on a farm and horse improvements during one of these years at issue. And third, I thought you might be interested in the scorecard. The next year, in 2007, the court found one factor in favor of the commissioner, seven in favor of the taxpayer, and one neutral. What a difference a year makes. Thank you, Your Honors. Okay, well thank you very much, Mr. Crago and Mr. Pat.